lml

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

DAVID DEWAYNE CLOSE, JR. and )
JADA KATHLEEN CLOSE,                   )         Case No. 07-2076-JAR
                                                     )         Case No. 07-2096-JAR
                 Debtors.                       )         (consolidated appeals)
_____ )
                                                     )
FELICIA S. TURNER,                        )
UNITED STATES TRUSTEE,               )
                                                     )
                 Appellant,                     )
v.                                                    )
                                                     )         Bankruptcy Case No. 06-20195-7
DAVID DEWAYNE CLOSE JR. and   )
JADA KATHLEEN CLOSE,                   )
                                                     )
                 Appellees.                     )
_____ )

**MEMORANDUM AND ORDER**

        This matter comes before the Court on appeal by the United States Trustee ("Trustee")

from an order of the bankruptcy court denying as untimely the Trustee's motion to dismiss the

underlying bankruptcy case pursuant to 11 U.S.C. § 707(b)(2) and the subsequent order granting

the Debtors a discharge.  For the reasons explained in detail below, the Court affirms the

bankruptcy court's orders.

**I.      Statutory Framework**

        Prior to the enactment of the Bankruptcy Abuse Prevention Consumer Protection Act of

2005 ("BAPCPA"),[1] 11 U.S.C. § 704 was concerned with duties of Chapter 7 trustees.  The 2005

_____

        [1]Pub. L. No. 109-8, 119 Stat. 37.  BAPCPA became effective in cases filed after October 17, 2005.  All
future statutory references are to BAPCPA, unless otherwise specified.  Any future reference to the Federal Rules of
Bankruptcy Procedure are to the Interim Rules, unless otherwise specified.  D. Kan. LBR Standing Order No. 05-5.

amendments added a new subsection (b) that sets forth duties of the United States Trustee in cases of all individual debtors.[2]  These duties pertain to the determination of whether a Chapter 7 case is an abuse as defined by section 707(b) and, in particular, the presumption of abuse under section 707(b)(2).  In BAPCPA, Congress sought to limit the discretion previously exercised by bankruptcy judges by creating a mechanical formula for presuming abuse in the filing of a Chapter 7 case.[3]  Congress implemented this policy by requiring debtors to file documentation on their financial condition and history in addition to the schedules of income and expenses and to prepare calculations to determine whether the new statutory presumption of abuse arises (the "Means Test").[4]  Highly simplified, the Means Test can be explained as follows: when a debtor's monthly disposable income is above the amount of $166.66, a "presumption of abuse" arises.[5]  If his monthly disposable income is less than $100, the presumption does not arise.[6]  If his monthly disposable income is between those amounts, then the presumption arises only if the amount, taken over 60 months, is sufficient to pay at least 25% of the debtor's nonpriority secured debt.[7]

Section 704(b)(1)A) requires the Trustee to review the materials filed by the debtor and to file a statement as to whether the debtor's case would be presumed to be an abuse under § 707(b).  The materials to be reviewed for the § 704(b)(1) statement include the schedules and statements filed by the debtor, which would include calculations of current monthly income and,

---

[2]11 U.S.C. § 704(b).

[3]*In re Hartwick*, 359 B.R. 16, 21 (Bankr. D.N.H. 2007).

[4]*See* 11 U.S.C. §§ 521, 707(b)(2)(C).

[5]*Id.* § 707(b)(2)(A)(i).

[6]*Id.*

[7]*Id.*

if the debtor's income is over the applicable state median income, calculations regarding the Means Test presumption of abuse.[8]  Each debtor with primarily consumer debts is required to file, in conjunction with his or her bankruptcy schedules and statement of financial affairs, a Statement of Current Monthly Income and Means Test Calculation, Official Form B22A of the Federal Rules of Bankruptcy Procedure.[9]  The materials also include evidence of payment from employers and a tax return.[10]  As discussed in more detail below, the Trustee's statement must be filed not later than ten days after "the date of the first meeting of creditors."[11]

If a debtor does not satisfy the Means Test, the case is presumed to be an abuse under § 707(b)(2).  At a hearing on a motion to dismiss under § 707(b)(2), a debtor may rebut the presumption only by demonstrating "special circumstances" as prescribed in § 707(b)(2)(B). However, at a hearing to dismiss a case where the presumption of abuse does not arise, the burden of proof is on the moving party to establish that the case was filed in bad faith or that the totality of the circumstances of a debtor's financial situation demonstrate abuse.[12]

If a presumption of abuse arises under the Means Test, it "may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces."[13]  If the debtor cannot rebut the presumption, he has the option

---

[8]11 U.S.C. §§ 521(a)(1), 707(b)(2)(C).

[9]*Id*. Although the Form is currently known as Form "22A," since the Form was known as "B22A" at the time the Debtors filed this case, the Court will continue to use that name.

[10]*Id*. § 521(a)(1)(iv), (e)(2)(A).

[11]*Id*. § 704(b)(1)(A).

[12]*Id*. § 707(b)(3).

[13]*Id*. § 707(b)(2)(B)(i).

of having his case dismissed or converted to a Chapter 13 proceeding, in which he may obtain a discharge only after repaying a set amount to his creditors.[14]  Even if the presumption of abuse does not arise or is rebutted, however, the court may find abuse based on the debtor's bad faith in filing the bankruptcy petition or the totality of the circumstances of the debtor's financial situation.[15]

Under BAPCPA, § 707(b)(2) allows not only the Trustee, but also other parties in interest and private trustees to move for dismissal of Chapter 7 cases where the debtor's net income "passes" the means test.[16]

## II.    Factual Background

Debtors filed their petition for Chapter 7 relief on February 28, 2006.  Included in the initial filing was Debtors' Form B22A.  Debtors reported $55,536.48 in annualized gross income.  The median income for a family of two in Kansas is $50,258.00.  Debtors completed the remaining sections of Form B22A because they are above median.  In Part VI of Form B22A, entitled "Determination of § 707(b)(2) Presumption," Debtors stated that their monthly disposable income was $192.96, or $11,577.60 over sixty months.  Because that amount of disposable income creates a presumption of abuse under 11 U.S.C. § 707(b)(2), the bankruptcy software used by Debtors' counsel automatically checked the box at the top of the form that states, "The presumption arises."

---

[14]*Id.* § 707(b)1).

[15]*Id.* § 707(b)(3).

[16]Under § 707(b)(7), creditors may only file a motion to dismiss if the debtor's current monthly income is above a certain income threshold.

The 11 U.S.C. § 341 meeting of creditors was scheduled for March 30, 2006.  On March 14, 2006, the Trustee sent a letter to Debtors' counsel requesting, among other things, pay stubs for the full six-month Certified Monthly Income ("CMI") period and inquiring about any health insurance expenses that may have been omitted as deductions on their Official Form 22A.  The Chapter 7 Trustee called the first meeting of creditors on its scheduled date but continued it at the Trustee's request to April 27, 2006, pending additional information to be supplied by the Debtors.  Debtors responded to the requests on March 30, 2006, and the continued meeting of creditors was concluded on April 27, 2006, without the parties actually meeting.

Debtors contend that they did not know their case was being analyzed for presumptive abuse until May 1, 2006, when the Trustee filed a notice of presumptive abuse under 11 U.S.C. § 704(b)(1)(A), followed by a Motion to Dismiss on May 30, 2006.  The Trustee sought dismissal under two subsections: § 707(b)(2) for abuse based on the presumption of abuse arising under the Form B22A, and § 707(b)(3), under the "totality of circumstances" standard.

Debtors filed an Amended Form B22A on June 20, 2006, indicating a presumption of abuse does not arise.  Although debtors' amendment reported $55,223.16 in annualized gross income, which remained above the median, the amendments to Debtors' expenses no longer indicated a presumption of abuse.  The Amended Form B22A corrected several errors in the original Form, which were attributed to error of counsel rather than the Debtors.

Debtors asserted that the Trustee's motion to dismiss was time-barred by § 704(b)(1)(A) because the notice of presumed abuse was filed ten days after the conclusion of the § 341 meeting rather than the date of the first § 341 meeting of creditors.  The parties agreed to

bifurcate the timeliness issue from the merits of the § 707(b)(3) totality of the circumstances issue.

On October 18, 2006, the bankruptcy court entered an Order denying the motion to dismiss on the § 707(b)(2) grounds, ruling that the plain language of § 704(b)(1)(A) supported the Debtors' interpretation that the "first" meeting was the first meeting date, and thus the motion to dismiss based on § 707(b)(2) was untimely.  Because the timeliness requirement to bringing a motion under § 707(b)(3) is 60 days from the first date set for the meeting of creditors,[17] the bankruptcy court determined that portion of the motion could proceed.

On October 27, 2006, the Trustee moved for reconsideration of the bankruptcy court's order, which the court denied on February 7, 2007.  In the interim, the Trustee withdrew that portion of the motion to dismiss based on the totality of the circumstances under § 707(b)(3).  On February 16, 2007, the bankruptcy court entered an order of discharge.  On February 20, 2007, the Trustee filed a notice of appeal from the order denying the motion to dismiss and the order denying the motion to reconsider.  Later that day, the bankruptcy court entered an order vacating the discharge order stating that it had been entered in error.  The next day, however, the bankruptcy court vacated the order vacating the discharge order and reinstated the discharge order, retroactive to the original date of February 16, 2007.  The Trustee filed a second notice of appeal from order of discharge and order setting aside order vacating discharge, and the two appeals were later consolidated by this Court.[18]

---

[17]Fed. R. Bankr. P. 1017(e).

[18](Doc. 2.)

6

### III.    Appellate Jurisdiction

The Trustee has elected to have the appeal heard by this Court.[19]  These appeals were timely filed by the Trustee, and the bankruptcy court's Orders are "final" within the meaning of 28 U.S.C. § 158(a)(1).[20]

### IV.    Standard of Review

On appeal from the bankruptcy court, the district court sits as an appellate court.[21]  The standards generally governing review of the bankruptcy court's decision are well-settled: findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo*.[22] Because this appeal "raises a legal question regarding the proper interpretation of the Bankruptcy Code," the bankruptcy court's order is subject to *de novo* review.[23]

### V.    Analysis

#### A.    Mootness

"An appellate court has the obligation to determine whether an appeal is moot in the constitutional sense, depriving the reviewing court of the appellate jurisdiction it initially possessed.  It must also determine whether an appeal is equitably moot, in the sense that the implementation of appellate relief, while possible, would be inequitable due to circumstances

---

[19]*See* 28 U.S.C. § 158(c)(1); B.A.P. 10th Cir. R. 8001-1(a), (e).

[20]*See* Fed. R. Bankr. P. 8001-8002.

[21]*See* 28 U.S.C. § 1334(a).

[22]*Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849, 851 (10th Cir. 1990); *In re Barber*, 191 B.R. 879, 882 (D. Kan. 1996); *see* Fed. R. Bankr. P. 7052, 8013.

[23]*In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1251 (10th Cir. 2001) (citing *Rushton v. State Bank of S. Utah (In re Gledhill)*, 164 F.3d 1338, 1340 (10th Cir. 1999)).

which have occurred after the appeal was filed."[24]  The doctrine of constitutional mootness applies where an event has occurred after an appeal is filed, which makes it impossible for the reviewing court to grant any effectual relief because there is no longer a "case or controversy" and the constitutional basis for federal jurisdiction no longer exists.[25]

Debtors assert that after the denial of the Trustee's motion to dismiss, the bankruptcy court entered the discharge order under 11 U.S.C. § 524.  Although the Trustee has appealed from the discharge order, the appeal itself does not effectuate a stay or preservation of the status quo.  Even if the Court were to reverse and remand and the Trustee were successful in her motion to dismiss, the discharge order would not be revoked.  Accordingly, Debtors argue, there is no case or controversy that can be determined by this Court and even if there were, there is no effective relief the Court can fashion.  The Trustee responds that the bankruptcy court erroneously entered a discharge order after the Trustee had filed a notice of appeal and that the Trustee's motion to dismiss remained "pending" until the order denying the motion to dismiss could no longer be appealed.[26]

The Court questions the merits of Debtor's arguments, particularly in light of its ability to vacate the discharge order in the event of reversal as opposed to revocation.[27]  Because the instant appeal may be easily resolved on the merits against the Trustee, however, this Court may

---

[24]*In re Dynamic Tooling Systems, Inc.*, 378 B.R. 417 (Table), 2007 WL 1747045, at *3 (B.A.P. 10th Cir. June 18, 2007) (citing *In re Inv. Co. of the SW., Inc.*, 341 B.R. 298, 306 (B.A.P. 10th Cir. 2006)).

[25]*In re Inv. Co. of the SW., Inc.*, 341 B.R. at 306.

[26]This issue is discussed *infra* at Part V.C.

[27]*See McVay v. Otero*, 371 B.R. 190, 205 (Bankr. W.D. Tex. 2007) (granting appeal from bankruptcy court's dismissal of United States Trustee's motion to dismiss under § 707(b) and vacating order of discharge).

forego complicated jurisdictional issues.[28]  As the Trustee's arguments are more easily dismissed on the merits, the Court does not reach the question of whether the appeal is moot.

### B.      Timeliness of Motion to Dismiss

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."[29]  "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."[30]  The Court begins with the language of the particular statute at issue.[31]  The Court's inquiry ceases if "the statutory language is unambiguous and the statutory scheme is coherent and consistent."[32]  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole."[33]

Section 704, denominated "Duties of Trustee," provides in subsection (b)(1)(A),

> [T]he United States trustee . . . shall review all materials filed by the debtor and, ***not later than 10 days after the date of the first meeting of creditors***, file with the court a statement as to whether

---

[28]*Carolina Cas. Ins. Co. v. Pinnacol Assurance*, 425 F.3d 921, 927-28 (10th Cir. 2005) (citing *Norton v. Mathews*, 427 U.S. 524, 530-32 (1976); *In re Conley*, 369 B.R. 67, 71-72 (B.A.P.1st Cir. 2007).

[29]*In re Kuntz*, 489 F.3d 1072, 1077 (10th Cir. 2007) (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 189, 194 (1985)).

[30]*Id.* (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 468 U.S. 189, 194 (1985)).

[31]*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).

[32]*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 240 (1989)).

[33]*Id.* at 341.

> the debtor's case would be presumed to be an abuse under section
> 707(b) . . . . (Emphasis added.)

In turn, § 704(b)(1)(B) directs that, "not later than 5 days after receiving a statement under

subparagraph (A), the court shall provide a copy of the statement to all creditors."

Section 704(b)(2), which governs the timing of the filing of a motion to dismiss,

provides,

> The United States trustee . . . shall, ***not later than 30 days after the
> date of filing a statement under paragraph (1)***, either file a
> motion to dismiss or convert under section 707(b) or file a
> statement setting forth the reasons the United States trustee . . .
> does not consider such a motion to be appropriate . . . . (Emphasis
> added.)

Although the parties each claim that the language of § 704(b)(1)(A) is plain and

unambiguous, they nonetheless arrive at starkly different interpretations.  The Debtors read "the

date of the first meeting of creditors" to mean the date on which the meeting is first scheduled,

March 30, 2006.  The Trustee argues the language means the entire § 341 meeting of creditors as

it may be continued from time to time, and that "date" refers to the date the meeting is

concluded, April 27, 2006.  The Trustee asserts that "first meeting of creditors" is synonymous

with "341 meeting," no matter how many dates "first meeting of creditors" may take.  The

Trustee argues that "first meeting of creditors" was a vestige of pre-Code practice, is widely used

in practice by courts and parties to refer to multiple meetings, and therefore does not refer to the

"date" of the meeting but to the series of meetings.  The Trustee also cites to 11 U.S.C. § 102(7),

which directs that "the singular includes the plural."

The Court begins its analysis with some historical context.  The Bankruptcy Act of 1898[34] that preceded the modern Bankruptcy Code provided for a "first meeting of creditors."[35] It also contained provisions for optional interim meetings after the "first meeting" and for a final meeting in some cases.[36]  The pre-BAPCPA Bankruptcy Code did not use the phrase "first meeting of creditors."  Section 341(a) of the pre-BAPCPA Bankruptcy Code provides that the Unites States Trustee shall "convene and preside at *a meeting* of creditors."[37]  Subsection 341(c) prohibits the court from presiding or attending "*any meeting* under this section including *any final meeting*. . . ."[38]  Subsection 341(d) provides that the trustee shall orally examine the debtor "[p]rior to the *conclusion of the meeting*. . ."[39]  Other Bankruptcy Code sections also refer to the "meeting of creditors."[40]  In 1999, Congress amended the Federal Rules of Bankruptcy Procedure to define the deadlines for objections to discharge and dischargeability as 60 days after "the *first date set* for the meeting of creditors under § 341."[41]  Thus, prior to BAPCPA, the Bankruptcy Code and Rules recognized a distinction between (1) "the meeting," meaning the first meeting

---

[34]Bankruptcy Act of July 1, 1898, Ch. 541, §§ 1-70, 30 Stat. 544-566 (formerly codified at 11 U.S.C. § 701-99), *repealed by* Act of Nov. 6, 1978, Pub. L. No. 95-598, § 401(a), 92 Stat. 2549 [hereinafter "Bankruptcy Act"].

[35]*Id*. § 55(a).

[36]*Id*. § 55(d) and (e).

[37]11 U.S.C. § 341(a) (emphasis added).

[38]*Id*. § 341(c) (emphasis added).

[39]*Id*. § 341(d) (emphasis added).

[40]*See id*. § 702(b) (addressing the right of creditors to elect a trustee "[a]t the meeting of creditors held under section § 341;" § 705(a) ("[a]t the meeting under section 341(a) of this title . . . ."); former § 521(2) (addressing debtor's duty to file the statement of intention "on or before the date of the meeting of creditors. . . .").

[41]Fed. R. Bankr. P. 4004(a), 4007(c) (emphasis added).  As the bankruptcy court noted, the fact that these rules of bankruptcy procedure provide dates tied to the meeting of creditors does not control the interpretation of § 704(b)(1)(A).

and any meeting thereafter until the meeting is concluded or final, (2) "the first date set for the meeting," and (3) the "conclusion of" or "final meeting."

BAPCPA, however, added several deadlines triggered by the § 341 meeting, using varied syntax.  For example, § 521 requires that a debtor perform his statement of intent within "30 days after *the first date set* for the meeting of creditors;"[42] that the debtor reaffirm or redeem "not later than 45 days *after the first meeting of creditors*;"[43] and that the debtor provide tax returns "not later than 7 days before *the date first set* for the first meeting of creditors."[44]  Section 1308(a) requires a debtor to file tax returns not later than the day before "*the date on which the meeting of creditors is first scheduled to be held*."[45]  Section 1324(b) requires a confirmation hearing to be held not earlier than 20 days and not later than 45 days "*after the date of the meeting of creditors* under section 341(a)."[46] And, of course, the language before us, the requirement that the Trustee file the statement of abuse "*not later than 10 days after the date of the first meeting of creditors*."[47]  But, BAPCPA did not amend § 341 or the other Code sections that continue to reference "the meeting."  Unfortunately, Congress did not define the new triggers in a clear and consistent manner.  Thus, the issue becomes, what did Congress intend by the phrase "date of the first meeting of creditors?"

---

[42]11 U.S.C. § 521(a)(2)(B) (emphasis added).

[43]*Id*. § 521(a)(6) (emphasis added).  This section does not include the word "date."

[44]*Id*. § 521(e)(2)(A)(i) (emphasis added).

[45]*Id* § 1308(a) (emphasis added).

[46]*Id*. § 1324(b) (emphasis added).

[47]*Id*. § 704(b)(1)(A) (emphasis added).

This is an issue of first impression in this District. Neither the Tenth Circuit nor any other circuit court of appeals has addressed the issue of the deadline for the Trustee to file a statement under § 704(b)(1)(A). In support of her position, the Trustee attaches two unpublished opinions that decline to follow Judge Berger's ruling in this case.[48] In *In re Williams*,[49] the bankruptcy court in the Southern District of Texas reconsidered its reliance on the order in this case based on its perceived erroneous presumption that the ten-day period to file the § 704(b)(1)(A) statement could be extended.[50] The court also cited *Collier on Bankruptcy* in support of its decision.[51] In *In re Sloan*,[52] the bankruptcy court in the Western District of Oklahoma also declined to follow the ruling in this case, citing *Collier*.[53] The *Sloan* court reasoned that if Congress meant for the Trustee's statement to be filed within ten days of the "first date set," it would have so specified.[54] The court also concluded that "meeting of creditors" encompasses multiple meeting dates, apparently equating that phrase with "first meeting of creditors."[55]

---

[48]The Trustee also cites an unpublished slip opinion that follows *In re Close*, without attaching a copy for the Court, in violation of Fed. R. App. P. 32.1(b).

[49]Case No. 06-20116 (Bankr. S.D. Tex. May 14, 2007).

[50]*Id*. slip op. at 2.

[51]*Id*. slip op. at 3.

[52]Case No. 06-11490-WV (W.D. Okla. Feb. 6, 2007).

[53]*Id*. slip op. at 4.

[54]*Id*.

[55]*Id*. slip op. at 5.

13

The Trustee also submitted supplemental authority post-briefing.   In *In re Cadwaller*,[56] an unpublished opinion from the Southern District of Texas, the bankruptcy court embarked on an extensive discussion of § 704(b) in holding that the ten days by which the Trustee must file his statement runs from the end of the creditors' meeting, not the commencement of the creditors' meeting.[57]   As with the previously mentioned cases, in support of its conclusion the bankruptcy court cites *Collier on Bankruptcy*:

> The statement must be filed within 10 days after the date of the "first meeting of creditors."  The "first meeting of creditors" is a term sometimes used in the past to refer to the section 341(a) meeting of creditors.  The language is somewhat unclear, but logically it makes sense to read this deadline as running from the conclusion of the meeting of creditors, rather than the first date set for the meeting of creditors, which is specifically referenced in some other Code provisions enacted at the same time.  Otherwise, if the debtor is unable to attend the meeting on the first date set, or provide all necessary documents, the United States trustee might not have all the materials necessary to make an accurate determination.[58]

Contrary to the decision in the instant case, the *Cadwaller* bankruptcy court found that the function of "first" in section 704 is "ambiguous, at best," and that it could not determine the "plain meaning."[59]  The court concluded that the "most reasonable interpretation is to recognize the essential equivalence of 'first meeting of creditors' and 'meeting of creditors' in general parlance.  This interpretation would make the word 'first' surplusage."[60]  Remarkably, the court

---

[56]No. 06-36424, 2007 WL 1864154 (Bankr. S.D. Tex., June 28, 2007).

[57]*Id*. at *13.

[58]*Id*. (citing 6 *Collier on Bankruptcy* ¶ 704.17[2] (15th rev. ed. 2006)).

[59]*Id*. at *12.

[60]*Id*.

went on to acknowledge that this interpretation clearly violated principles of statutory construction, but it was "not aware of any better alternative."[61]  Reading the term "date" as "dates" to include the entire period that the § 341 meeting convenes, the court concluded that the deadline refers to all dates of the first meeting of creditors, including continuances or resets.[62]

The *Cadwallder* bankruptcy court also held that "§ 704(b) is a mandate for U.S. Trustee action imposed for the benefit of the Court and the other parties in interest, not a deadline. Therefore, even if the U.S. Trustee had not met the § 704(b) deadlines, the motion [to dismiss] would not be time barred merely for that reason."[63]  The court found that although § 704(b) sets a time for the Trustee to file a statement of presumed abuse, it specifies no consequence for tardy action.[64]

The Court is not persuaded by either the Trustee's arguments on appeal or the cases cited in support of her position, as they utilize incomplete or questionable applications of statutory construction.  Moreover, although *Collier on Bankruptcy* is a well respected, oft-quoted resource for bankruptcy courts and practitioners, it does not employ any statutory construction in its blanket conclusion on this issue.  Instead, the Court is persuaded by the bankruptcy court's reasoning that the statutory language of § 704(b)(1)(A) supports a plain language interpretation that "first" means "first."  In other words, the plain meaning of the phrase "date of the first meeting of creditors" refers to the first meeting date and not some later date.  The language is not

---

[61]*Id.*

[62]*Id.*

[63]*Id.* at *9.

[64]*Id.* at *6.

vague or ambiguous and does not need extraneous verbiage to clarify its meaning.  The Court agrees with the bankruptcy court that the Trustee reads more into the statute than what it unambiguously states, both by reading "conclusion" into the statute to support her own position, or by requiring "first date set for" by attacking Debtors' position.  Under either alternative, the Trustee must add words to the statute to make her interpretation work.  Similarly, the fact that "first meeting of creditors" was commonly understood pre-Code to refer to multiple meetings, ignores the express use of the word "date" to refer to the first meeting.  Again, the Trustee's interpretation either derogates from or adds to the plain language of § 704(b)(1)(A).

Nor is the Court persuaded by the Trustee's reliance on § 102(7), the rule of construction providing that the singular includes the plural, to support its argument that a meeting of creditors can occur on multiple "dates."  If the word "date" in § 704(b)(1)(A) is to be read as the plural "dates," so should the word "meeting," as in "not later than 10 days after the *dates* of the first *meetings* of creditors. . . ."  The Trustee's interpretation would render the word "first" meaningless, which the Court declines to adopt.[65]  Likewise, the Court rejects the Trustee's argument that the bankruptcy court's interpretation would require her to file statements of abuse "during" the meeting of creditors and not "after."  This argument is valid only if the Court reads the plain language of the statute to include multiple meetings and omits the word "first."

The Court finds some support for its holding from analogous rulings of other courts dealing with the related question of whether a timely unequivocal statement of abuse is a

---

[65]*Lopez-Soto v. Hawayek*, 175 F.3d 170, 174 (1st Cir. 1999) (It is a "time-honored tenet that [a]ll words and provisions of a statute are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous.") (quotation omitted).

prerequisite to the Trustee's § 707(b) motion to dismiss.  The bankruptcy court did not have the benefit of these decisions, as they were issued after the briefing was completed in the instant appeal, and several opinions were submitted by Debtors to the Court as supplemental authority.

The bankruptcy court in *In re Robertson*[66] held that § 704(b)(1)(A) requires the Trustee to timely file an unequivocal statement that a case is or is not presumptively an abuse under § 707(b).  In *Robertson*, the Trustee filed a statement ten days after the date first set for the meeting of creditors issued by the clerk's office upon filing of the debtors' petition that stated:

> The United States Trustee has determined that the debtor has not filed nor transmitted all of the required means testing documents and that without these documents, the United States Trustee cannot make a determination as to whether the debtor's case is presumed abusive under section 707(b).[67]

This statement was followed within 30 days by a motion to dismiss under § 707(b)(2).  Debtors raised a threshold issue that the motion was barred because the Trustee had never filed a "statement as to whether the debtors' case would be presumed to be an abuse under [11 U.S.C. §] 707(b)," as required under § 704(b)(1)(a).[68]

Turning to the plain meaning of the statute, the bankruptcy court held that the phrase "the United States Trustee . . . shall review all materials filed by the debtor," means materials filed *with the court*; there is no reference to materials to be obtained from the debtor or third-party

---

[66]370 B.R. 804, 810-11 (Bankr. D. Minn. 2007).

[67]*Id*. at 807.

[68]*Id*. at 807-08.

sources via formal discovery, informal exchange, or independent investigation.[69]  Thus, in

conducting the

> statutorily-mandated early evaluation of a case for the prospect of
> a presumption of abuse, the [United States Trustee] ultimately is
> relegated to relying on what the debtor "filed" in the case.  The
> statute seems to contemplate that this will present sufficiently
> reliable information on which to make an evaluation—at least
> when debtors and their counsel have complied with the newly-
> heightened duties of verification as to accuracy that BAPCPA has
> imposed."[70]

The court further found that the statute is equally clear that the Trustee's statement requires an

election between two specific representations, which are to go in an unequivocal fashion to the

Trustee's estimation of the legal posture of the case in light of § 707(b)(2).[71]  In short, "[t]here

either *is* or *is not* a presumption of abuse based on a detail-busy analysis of the debtor's monthly

income, reduced by the expenses and secured debt payments and so forth, both general in nature

and fussily pinpoint-specific, that are laid out in §§ 707(b)(2)(A)-(B)."[72]  The court concluded

that "[u]nder the common, every-day meaning of the statutory verbiage there is no room for an

equivocal placeholder, the planting of a stake that is somehow to reserve the right to draw a

conclusion for later exercise, to toll the period under § 704(b)(2) for the filing of a motion under

§ 707(b)(2), or both."[73]  Since the Trustee did not timely put of record his unequivocal

---

[69]*Id*. at 809 (emphasis in the original).

[70]*Id*.  The court noted that the new text seems to be designed to "put some teeth" into this assumption."  *Id*.
at 809 n.8.

[71]*Id*. at 810.

[72]*Id*.

[73]*Id*. at 810.

conclusion that the presumption lies in *Robertson*, he was precluded from filing his motion to dismiss.[74]

In its examination of the issue, the *Robertson* court noted that the timeliness elements of § 704(b) are consistent with the policies sought to be engendered by BAPCPA. "The language of §§ 704(b)(1)-(2) tracks with a more general intent behind BAPCPA, to reduce delay in the fixing of rights and statuses during the court of bankruptcy cases, and in particular to expedite the basic determination of whether a party should be in bankruptcy at all."[75] As the court explained,

> This is one instance, however, where the onus of acting quickly, clearly, and decisively falls on a party other than the debtor. BAPCPA contained a number of ostensibly strict-compliance, zero-tolerance measures that weigh heavily on debtors in bankruptcy. This one happens to impact on a constituency that stands in opposition to a debtor.[76]

The decision in *Robertson* has garnered support from several courts.[77] Although decided in the context of the content of the statement, these cases all require the statement filed pursuant to § 704(b)(1)(A) to be both unequivocal and "timely."[78] In each of these cases, as in *Robertson*,

---

[74]*Id.* at 811.

[75]*Id.* (citing H.R. Rep. No. 109-31, pt. 1.(2005)).

[76]*Id.* (citations omitted).

[77]*See, e.g., In re Ansar*, —B.R.—, 2008 WL 623136, at *3 (Bankr. D. Minn. Mar. 5, 2008) (adopting decision in *Robertson* as a careful and sound analysis with respect to the ten-day statement requirement); *In re Byrne*, 376 B.R. 700, 703 (Bankr. W.D. Ark. 2007) ("In the absence of a timely filed statement under § 704(b)(1), the UST is precluded from filing a motion to dismiss based on a presumption of abuse, i.e., a § 707(b)(2) motion."); *In re Perrotta*, 378 B.R. 434, 438 (Bankr. D.N.H. 2007) ("[F]ailure to timely file a statement of presumed abuse by the deadline in § 704(b)(1) results in the UST being unable to pursue dismissal of a case for presumed abuse under § 707(b)(1) and (2)."). *But see In re Cadwallder*, No. 06-36424, 2007 WL 1864154, at *9 (Bankr. S.D. Tex. 2007) (holding that because Congress did not specify consequences for failure to meet the § 704(b) deadlines, there would be none).

[78]*Id.*

the Trustee filed the § 704(b)(1) statement within ten days of the date originally set for the meeting of creditors, based on the filing of the bankruptcy petitions.[79]  And, as in *Robertson*, the Trustee's statement was to be based on what the debtor filed with the court, not on additional documentation requested by the Trustee.  Indeed, the Form B22A is quite comprehensive, the apparent purpose of which is to determine whether a presumption does or does not arise in the debtor's case.[80]  Thus, these courts seem to have imposed upon the Trustee a deadline for filing a § 704(b)(1) statement of abuse.[81]

Although the proper interpretation of § 704(b)(1)(A) is dictated by the language of the statute itself, the Court notes that its interpretation comports with the purposes of BAPCPA.[82]  The legislative history for BAPCPA reveals that "[t]he heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford."[83]  The new consumer bankruptcy provisions were intended to respond to several factors, including the escalation of consumer bankruptcy filings and the "growing perception that bankruptcy relief may be too readily available and is sometimes used as a first resort, rather than a last resort;" the adverse financial consequences for

---

[79]*See Ansar*, 2008 WL 623136, at *1; *Perrotta*, 378 B.R. at 436; *Byrne*, 376 B.R. at 701.

[80]*Byrne*, 376 B.R. at 703-04.

[81]*See Perrotta*, 378 B.R. at 437.

[82]Notwithstanding the determination that statutory language is clear on its face, the court may look to legislative history to reinforce its conclusion that the statute is, indeed, unambiguous.  2A *Sutherland Statutory Construction* § 46:4 (7th ed. 2007); s*ee also Wieland v. Thomas*, —B.R.—, 2008 WL 597586, at *5 (D. Kan. Mar. 4, 2008).

[83]H.R. Rep. No. 109-31(1), 2005 U.S.C.C.A.N. 88, 89.

the economy as a whole resulting from increased filings; loopholes and incentives in the prior

system "that allow and sometimes even encourage opportunistic personal filings and abuse;" and

the fact that "some bankruptcy debtors are able to repay a significant portion of their debts."[84]

The report accompanying the act notes that the prior "substantial abuse" standard for dismissal

was inherently vague, and thus the new statute replaces the prior presumption in favor of

discharge with a mandatory presumption of abuse arising under a certain formula.[85]  As noted

above, those amendments were intended to reduce delay and in particular, to expedite the basic

determination of whether a party should be in bankruptcy.  If the Trustee were permitted to

postpone filing the § 704(b)(1)(A) statement until after she decides to conclude the § 341

meeting, the purpose of the statute would be frustrated.  Moreover, Fed. R. Bankr. P. 1017(e)

clearly establishes a 60-day deadline for any party to file a motion to dismiss under § 707(b),

except to the extent that § 707(b)(2) sets the deadline for the Trustee to act.  The 60 days runs

from the first date set for the meeting of creditors.[86]  If the § 704(b)(1)(A) deadline ran from the

conclusion of the meeting of creditors, as argued by the Trustee, the consequence might be that

the § 704(b) deadline could be longer than the Rule 1017(e) deadline.[87]

---

[84]*Id*. at 90-92.

[85]*Id*. at 98-99, 119.

[86]Fed. R. Bankr. P. 1017(e).

[87]As Debtors point out, the court is to provide a copy of the statement filed by the Trustee to all creditors within five days after it is filed.  11 U.S.C. § 704(b)(1)(B).  Presumably, this is to give creditors an opportunity to file their own motions to dismiss under § 707(b)(2), if they are eligible to do so.  Thus, it is likely that most creditors will wait and see if the Trustee files a motion, saving them the expense.  The Court notes that if the Trustee is permitted to postpone filing of the statement, it might negatively impact a creditor's deadline for doing so.

Furthermore, the fact that this deadline might be burdensome to the Trustee is of no consequence in the Court's analysis.[88]  As another bankruptcy court recently explained, "[t]he loss of the benefit of the presumption is the consequence Congress intended on the [United States Trustee] for failure to meet the deadline."[89]  The Supreme Court has clearly instructed bankruptcy courts to not consider whether particular phraseology makes good policy sense, to the extent a court can ascertain policy, but instead to apply the statute as written, leaving it to Congress to amend the statute if a contrary interpretation was intended.[90]  As the Court explained, "[o]ur unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."[91]

Nor would the Court's interpretation permit debtors to escape the consequences of failing to file the required materials or withholding information for the Trustee to review.  As the bankruptcy court noted, the Trustee has options when faced with an uncooperative debtor and time constraints.[92]  In addition, § 707(a)(3) provides for dismissal of the case for cause upon motion of the Trustee for failure of the debtor to timely file the information required by § 521(1),

---

[88]The Court questions the Trustee's claim of a burden in this particular case, as Debtors' Form B22A, although apparently erroneous, clearly stated on its face that the presumption applied and they responded to the Trustee's inquiry letter with information in time for the Trustee to have met the ten-day deadline after the first meeting of creditors.

[89]*Perrotta*, 378 B.R. at 438.

[90]*See Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004).

[91]*Id*. at 538.

[92]These suggested options include moving to continue the first date set for the § 341 hearing or filing the presumption of abuse based on the debtor's failure to provide sufficient information.  Bankruptcy Court Order at 6.  In addition, the Debtors suggest that the Trustee can file a motion to extend the ten day deadline pursuant to Fed. R. Bankr.P. 9006 or 11 U.S.C. § 105(a).  The Court mentions these options by way of example only, and leaves the merits of any such issues for the bankruptcy courts.

including Form B22A.[93]  Under BAPCPA, § 707(b) imposes Rule 9011 standards on the debtor's attorney in preparing the schedules, statements and Form B22A's and attorneys can be sanctioned if they file these documents without sufficient legal or factual basis or inquiry. Moreover, it is important to note that even if there is no presumption of abuse, the Trustee is not precluded from taking action when she finds a case to be abusive under a "totality of the circumstances" or bad faith analysis.[94]  Where no presumption of abuse arises, the 30-day deadline imposed by § 704(b)(2) does not apply and a § 704(b)(1)(A) statement is not a prerequisite for filing.[95]

The Court concludes that because the date of the first meeting of creditors was March 30, 2006, the Trustee should have filed the statement on or before April 10, 2006, and should have filed the motion to dismiss under § 707(b)(2) within 30 days, or by May 10, 2006.  The Trustee did not do so and accordingly, the motion to dismiss was untimely.  The bankruptcy court's order denying the Trustee's motion to dismiss on this basis is therefore affirmed.

### C.      Entry of Discharge Order

Nine days after the bankruptcy court entered its order denying reconsideration of its order denying the Trustee's motion to dismiss, the bankruptcy court entered an order granting Debtors a discharge.  The Trustee contends that this was in error under Bankruptcy Rule 4004(c)(1), which provides that the bankruptcy court "shall forthwith" grant a discharge unless a motion to

---

[93]11 U.S.C. § 707(a)(3).

[94]11 U.S.C. § 707(b)(3).

[95]*In re Byrne*, 376 B.R. 700, 704 (Bankr. W.D. Ark. 2007) (holding if the United States trustee fails to file a definitive § 704(b)(1) statement, she is not precluded from filing a motion to dismiss based on § 707(b)(3) for bad faith or a totality of the circumstances surrounding a debtor's financial situation that indicates abuse).

dismiss the case under § 707 is pending. [96] According to the Trustee, this rule precludes a discharge not only before the bankruptcy court has ruled on a motion to dismiss, but also during the time in which the Trustee is pursuing an appeal of the ruling.  The Trustee further asserts that the bankruptcy court lacked jurisdiction to enter the order reinstating the vacated discharge order by reason of her filing a notice of appeal.

Given its aforementioned decision affirming the bankruptcy court's order denying the Trustee's motion to dismiss, the Court questions the need to address this issue.[97]  Nevertheless, the Court finds that the Trustee cites no support for the proposition that her motion to dismiss was pending after the bankruptcy court entered its final order denying the motion to reconsider. Accepting the Black's Law Dictionary of "pending" as cited by the Trustee—that a matter is pending from inception until final judgment—the motion to dismiss was pending until February 7, 2007.  The order became final on that date, and the Trustee was entitled to file an appeal of right.[98]  There is no stay of execution preventing immediate finality from an order denying a motion to dismiss under § 707(b),[99] and the Trustee did not move for a stay pending appeal. Moreover, under the Trustee's theory, the order vacating the discharge order was itself void, and thus the original discharge order entered before any notice of appeal should stand.  Accordingly, the order granting Debtors a discharge is also affirmed.

---

[96]Fed. R. Bankr. P. 4004(c)(1).

[97]*See McVay v. Otero*, 371 B.R. 190, 205 (Bankr. W.D. Tex. 2007).

[98]28 U.S.C. § 158(a)(1).

[99]See Fed. R. Bankr. P. 9014 (governing which of the federal rules of civil procedure apply to contested matters) and Fed. R. Civ. P. 62 as incorporated by Fed R. Bankr. P. 7062 (imposing a stay of execution on judgments only in adversary proceedings filed under Rule 7000).

**IT IS THEREFORE ORDERED BY THE COURT** that the Order of the bankruptcy court denying the United States Trustee's motion to dismiss pursuant to § 707(b)(2) and the subsequent Order granting Debtors a discharge are AFFIRMED.

Dated this 28th day of March 2008.

 S/ Julie A. Robinson\
Julie A. Robinson\
United States District Judge